IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DANIEL BRYCE HURLBUT                                                                    PLAINTIFF

v.                                           Civil No. 6:18-CV-06016

DR. CHARLES LIGGETT, et al.                                                            DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1), (3) (2011), the Hon. Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 43).

**I.  BACKGROUND**

On February 1, 2018, Plaintiff, Daniel Bryce Hurlbut ("Hurlbut") filed his complaint listing the following Defendants: Dr. Charles Liggett, Correct Care Solutions, Nurse Kellog-Carter, Ms. Huff, Nightshift Nurse Jane Doe, Dr. Henry, Dr. Steve, Rusty Armstrong, and Mr. Chism.  (ECF No. 1).  Hurlbut alleges seven claims in his initial complaint.  (*Id*.).  Several of these claims are based on events alleged to have occurred at the Tucker Unit ("Tucker") of the Arkansas Department of Corrections ("ADC"), which is in the Eastern District of Arkansas, Pine Bluff Division, while other claims are based on events alleged to have occurred at the Ouachita River Correctional Unit ("Ouachita"), located in the Western District of Arkansas, Hot Springs Division.  (*Id*.).  On February 1, 2018, the Hon. Barry A. Bryant, United States Magistrate Judge, severed the claims involving Hurlbut's medical care and his assignment to the SATP program after his August

30, 2017, transfer to Tucker, including all claims against Mrs. Huff, the Jane Doe Night Nurse, Dr. Henry, Dr. Steve, Rusty Armstrong, and Mr. Chism. (ECF No. 4).

The surviving claims, Claims 1, 2, and 5, allege that Defendants, Correct Care Solutions, LLC ("CCS"), Dr. Charles Liggett ("Dr. Liggett"), and Kimberly Kellog-Carter ("Kellog-Carter") ("Defendants"), were deliberately indifferent to Hurlbut's medical condition between August 23, 2017 and August 30, 2017. (ECF No. 1). Hurlbut alleges in his first claim that on August 29, 2017, Dr. Liggett performed surgery on his staph-infected leg without his consent and before performing any medical scans or tests or consulting an endocrinologist. (*Id*. at 6). Hurlbut alleges that Dr. Liggett did not give him any pain medication, anesthesia, or antibiotics, and did not properly record the surgery. (*Id*.). Hurlbut further alleges that Dr. Liggett then sent him back to his cell on the "Second Tier," and cleared him for transportation the next day. (*Id*.). Hurlbut alleges in his second claim that, due to his adrenal disease, his leaking boil required antibiotics and a stress-dosing shot, which Kellog-Carter and Dr. Liggett refused to prescribe him. (*Id*. at 7). Hurlbut alleges in his fifth claim that he should have been given antibiotics and steroids earlier in his illness, that the surgery performed by Dr. Liggett made the infection much worse, and that he could have been saved a lot of pain had he been taken to the hospital sooner. (*Id*. at 10). Hurlbut further alleges that Dr. Liggett and Kellog-Carter are employees of CCS. (*Id*.).

On January 17, 2019, Defendants filed a Motion for Summary Judgment (ECF No. 43), a Statement of Facts (ECF No. 44), and a Memorandum Brief in support of their Motion (ECF No. 45). On January 18, 2019, Hurlbut was ordered to respond. (ECF No. 49). On January 31, 2019, Hurlbut filed a Response in Opposition to the Defendants' Motion for Summary Judgment (ECF No. 52), a Cross Motion for Summary Judgment (*Id*.), a Statement of Facts (ECF No. 54), and Memorandum Brief in support of his Response (ECF No. 53).

2

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  ANALYSIS

Defendants first note that Plaintiff's claims arise from Defendants' treatment of an infection that developed after he received a large prison tattoo on his left leg. (ECF No. 44-5 at 39-40; 45 at 1).  Plaintiff described this tattoo as a tree and tree roots that cover his leg from the top of his knee, front of his shin, and down his foot. (ECF No. 44-5 at 40).  Defendants then argue that Hurlbut's claims should be dismissed for failure to exhaust his administrative remedies and

failure to make a claim for deliberate indifference to his medical condition. (ECF No. 43 at 2). Hurlbut argues that Defendants were deliberately indifferent to his medical condition when treating him for an infection in light of his congenital adrenal hyperplasia. (ECF No. 1). Hurlbut further argues that he did not fail to exhaust (ECF No. 52 at 1), that the grievance process was inaccessible to him (*Id*.), and that Defendants waived exhaustion (*Id*. at 4).

### A.  Failure to Exhaust Administrative Remedies

Hurlbut failed to exhaust his administrative remedies as required for a claim to proceed under 42 U.S.C. § 1983.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines." *Id*.

The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

ADC policy sets up a specific process for filing and appealing grievances. At Step One, "[i]nmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance." (ECF No. 44-1 at 5). After attempting to resolve the issue, "an inmate can proceed to Step Two by filing a formal grievance on the same Unit Level Grievance Form [] that was used for Step One." (*Id*. at 8). These "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by ADC." (*Id*. at 4). If the Grievance Officer receiving the formal grievance notes that the "grievance is medical in nature," he or she forwards the grievance "to the Health Services Administrator (HSA) at the Unit Medical Department for a response." (*Id*. at 9). The Grievance Officer then "transmit[s] an Acknowledgement or Rejection of the Unit Level Grievance Form [] to the inmate within five (5) working days after receipt." (*Id*.). "If an inmate has not received a response to his/her Unit Level Grievance within the allotted time frame as stated on the Acknowledgement Form[,] . . . the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days." (*Id*. at 10). Further, if the inmate is not satisfied with the response received from the HSA, "he or she may appeal within five (5) working days to the appropriate Chief Deputy/Deputy/Assistant Director . . . ." (*Id*. at 11).

Hurlbut filed three grievances with ADC relating to the claims before the Court today, numbered OR-17-00804, OR-17-00785, and OR-17-00768.[1] (ECF No. 44-2). He failed, however, to exhaust each of these grievances.

Hurlbut failed to exhaust grievance number OR-17-00804 for two reasons. First, his grievance did not specifically allege that a particular individual was responsible (ECF No. 44-2 at 12) in violation of ADC policy requiring that inmates "specifically name each individual involved" in grievances (ECF No. 44-1 at 4). Thus, Hurlbut did not follow ADC guidelines for exhaustion, and this grievance was not fully exhausted. *See Jones*, 549 U.S. at 218 (Although the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, . . . the prison's requirements . . . define the boundaries of proper exhaustion."). Second, Hurlbut failed to exhaust OR-17-00804 because he did not take his final appeal provided by ADC policy. ADC staff forwarded his initial complaint to medical on August 28, 2017. (ECF No. 44-2 at 12). On September 7, 2017, Hurlbut submitted a formal grievance claiming that he had received no response. (*Id*.). According to ADC policy, Hurlbut was due a response on this by October 13, 2017. (*Id*. at 10). On September 15, 2017, the status of his grievance was changed to "No Further Action," and no appeal of this decision is noted. (*Id*.). There is some question of whether Hurlbut was on notice that this grievance would not be addressed.[2] However, even if he was without notice, Hurlbut was responsible for appealing the

---

[1] The Court notes that Hurlbut submitted two additional grievances which may have been relevant to the case here, but were not filed within the fifteen (15) day period allowed for filing of ADC grievances: OR-18-00268, filed on February 8, 2018 (ECF No. 54-3 at 5), and OR-18-00529, filed on April 10, 2018 (ECF No. 54-3 at 12). As such, each of these grievances did not follow ADC policy and are, thus, not exhausted. *See Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines."). The other grievances submitted by Hurlbut are not relevant to this claim. (ECF No. 54-3).

[2] In her affidavit, Shelly Byers claims that this was the fifth "formal grievance" that Hurlbut submitted in a seven-day period and was, therefore, rejected, and no further action was taken. (ECF No. 44-3 at 2). ADC limits inmates to three formal grievances ("Step Two") in a seven-day period which "begins each Saturday and ends on Friday" in both cases. (ECF 44-1 at 14). Although no further evidence in the record supports this assertion, it is not specifically refuted in Hurlbut's Response. (ECF No. 52). However, when ADC staff receive a fourth or

grievance if he did not receive a response. ADC policy allows an inmate who has "not received a response to his/her Unit Level Grievance within the allotted time frame . . . . [to] move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director's Level within five (5) working days." Thus, Hurlbut was still required under ADC policy to appeal the grievance even if he did not receive notice that his grievance would not be addressed. Hurlbut failed to make this final appeal afforded to him by ADC policy and, therefore, he failed to exhaust this grievance. *See Hammett*, 681 F.3d at 947 (requiring that the "inmate pursue the prison grievance process to its final stage" for exhaustion).

Further, Hurlbut failed to exhaust grievance number OR-17-00785 when he failed to appeal the February 15, 2018 decision of the HSA finding his appeal without merit. (ECF No. 44-2 at 6). Under ADC policy, Hurlbut had five (5) working days to appeal the HSA's decision to the appropriate Director. (ECF No. 44-1 at 11). Hurlbut did not make this final appeal afforded to him by ADC policy and, thus, he failed to exhaust this grievance as well. *See Hammett*, 681 F.3d at 947 (requiring that the "inmate pursue the prison grievance process to its final stage" for exhaustion).

Finally, although Hurlbut exhausted grievance number OR-17-00768 as to the process itself,[3] Hurlbut failed to exhaust as to the Defendants or claims in this case. Events allegedly

---

subsequent formal grievance within the designated seven-day period, they are required to follow specific procedures which were not followed in this case. (ECF No. 44-1 at 14-15). Because staff noted this grievance as a medical issue, the grievance officer was required to "note at the top of the grievance form 'EXCEEDS WEEKLY LIMIT'" before forwarding it to medical (*Id.*), which he or she did not do. (ECF No. 44-2 at 12). Further, if Health Services determined that this was not an emergency, he or she was required to "note[] at the top of the grievance form, 'not an emergency' beside the 'EXCEEDS WEEKLY LIMIT' statement" and then date, sign, and return the form to the grievance officer for filing (ECF No. 44-1 at 14-15), which he or she did not do. (ECF No. 44-2 at 12). Thus, ADC staff did not follow procedure in answering the grievance, leaving as an open question whether Plaintiff was on notice that Health Services would not answer his grievance.

[3] Hurlbut took grievance number OR-17-00768 to its final appeal to the Director, who found the appeal to be with merit. (ECF. No. 44-2 at 1). While this grievance names particular individuals involved in the disputes, these individuals are not the Defendants in this case and were involved with events occurring solely at the Tucker unit. (ECF No. 44-2 at 4).

occurring at Tucker are the focus of this grievance (ECF No. 44-2 at 4), and they are outside the jurisdiction of this Court. However, a portion of this grievance states, "[t]his grievance is about deliberate indifference to my serious medical condition, severe staph infection that needed surgery, on the part of ADC and CCS staff by refusing me a wheelchair" upon arrival at Tucker. (*Id*.). This portion could be construed to mean that Hurlbut should have been given a wheelchair script when he was seen at Ouachita by CCS staff, including Dr. Liggett. Although Hurlbut alleges that Dr. Liggett cleared him for transportation the day after his surgery (ECF No. 1 at 6), and that he was left without a wheelchair upon arrival at Tucker (ECF No. 1 at 8), he does not specifically allege that Dr. Liggett or anyone at Ouachita was at fault for failing to write him a wheelchair script. Even with a liberal reading of the claims before this Court, Hurlbut failed to exhaust as to the Defendants because he did not follow ADC policy requiring that he "specifically name each individual involved" in the grievance. (ECF No. 44-1 at 4). Thus, Hurlbut did not follow ADC guidelines for exhaustion, and grievance OR-17-00768 was not fully exhausted. *See Jones*, 549 U.S. at 218 (Although the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, . . . the prison's requirements . . . define the boundaries of proper exhaustion.").

The Court notes Hurlbut's argument that the grievance system was "inaccessible" to him as a remedy. (ECF No. 52 at 2). In support of this argument, Hurlbut alleges that he has had problems filing grievances, including parts of grievances disappearing, grievances being returned without being processed, grievances being withheld until after deadlines, and grievances being marked as duplicates which he refiled after no answer. (ECF No. 53 at 2). Hurlbut does not, however, allege that these problems occurred with any of the relevant grievances, nor does he allege this in his grievances submitted to this Court. (ECF No. 54-3). Further, the Court notes that

Hurlbut has filed a large number of grievances and appeals of those grievances, thereby clearly demonstrating that he has, in fact, had access to the grievance process. (ECF No. 54-3).

The Court further notes Hurlbut's contention that Defendants have "waived" exhaustion by failing to respond to a letter giving "notice" to ADC that he had not received answers to several grievances. (ECF No. 54 at 3). This "notice" has no legal power because there is nothing in the ADC grievance policy that permits the use of a letter from an inmate to substitute for the formal grievance process. Moreover, this letter does not concern any of the relevant grievances. (ECF No. 54-3 at 27). Thus, Hurlbut is not excused from exhaustion and has failed to exhaust these claims.

### B. Deliberate Indifference

Defendants further argue that Hurlbut has not stated a basis for an Eighth Amendment claim based on deliberate indifference to Hurlbut's medical condition. Because Hurlbut failed to exhaust his claims, it is not necessary to address these arguments. The Court notes, however, that although Plaintiff claims Defendants acted with deliberate indifference to his medical condition by failing to provide antibiotics and a stress-dosing shot prior to his procedure (ECF No. 1), Plaintiff also acknowledges that he paid an unknown inmate to give him a large tattoo from his left knee to his foot (ECF No. 44-5 at 39-40) without receiving any stress-dosing shot or antibiotics (*Id*. at 44-46).

### IV.  CONCLUSION

Accordingly, I recommend that Defendant's Motion for Summary Judgment (ECF No. 43) be GRANTED and Plaintiff's Complaint (ECF No. 1) be DISMISSED WITH PREJUDICE. I further recommend that Plaintiff's Cross Motion for Summary Judgment (ECF No. 52) be DENIED.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of July 2019.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE